IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

RECEIVED
USDC, CLERK, CHARLESTON, SC

2008 MAR 31  P 1:30

ZELLA M. DAVIS,                    )    C. A. No. 2:07-1621-JFA-RSC
                                   )
            Plaintiff,             )
                                   )
        -versus-                   )    **REPORT AND RECOMMENDATION**
                                   )
MICHAEL J. ASTRUE,                 )
COMMISSIONER OF SOCIAL             )
SECURITY,                          )
                                   )
            Defendant.             )

This case is before the court pursuant to Local Rule 83.VII.02, D.S.C., concerning the disposition of Social Security cases in this District.

The plaintiff, Zella M. Davis, brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying the plaintiff's claims for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act.

## ADMINISTRATIVE PROCEEDINGS

The plaintiff filed an application for supplemental security income benefits and disability insurance benefits on May 19 and May 21, 2004, respectively, alleging that she became unable to work on October 1, 2002, due to headaches and back impairments. At a hearing on March 17, 2006, the plaintiff amended her alleged

onset date to October 29, 2003.  The applications were denied
initially and on reconsideration by the Social Security
Administration.  On May 3, 2005, the plaintiff requested a
hearing.  The administrative law judge before whom the plaintiff
appeared with her attorney and vocational expert, Rebecca Bruce,
considered the case de novo, and April 18, 2006, found that the
plaintiff was not disabled under a disability as defined in the
Social Security Act, as amended.  (Tr. 13-20).  The
administrative law judge's opinion became the final decision of
the Commissioner of Social Security when it was approved by the
Appeals Council on April 16, 2007.

In making the determination that the plaintiff is not
entitled to benefits, the Commissioner adopted the following
findings of the administrative law judge:

> 1.  The claimant meets the insured status
> requirements of the Social Security Act through
> June 30, 2008.
>
> 2.  The claimant has not engaged in substantial
> gainful activity at any time relevant to this
> decision (20 CFR 404.1520(b), 404.1571 et seq.,
> 416.920(b) and 416.971 et seq.). ...
>
> 3.  The claimant has the following severe
> impairment: back and leg pain (20 CFR 404.1520(c)
> and 416.920(c). ...
>
> 4.  The claimant does not have an impairment or
> combination of impairments that meets or medically
> equals one of the listed impairments in 20 CFR
> Part 404, Subpart P, Appendix 1 (20 CFR
> 404.1520(d), 404.1525, 404.1526, 416.920(d),
> 416.925 and 416.926). ...

5.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to lift and carry up to fifty pounds occasionally and twenty-five pounds frequently; perform occasional stooping and climbing of stairs and ramps; no climbing of ladders or scaffolds; and perform simple, routine work. ...

6.  The claimant is capable of performing past relevant work as a cleaner, as she actually performed that work.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965). ...

7.  The claimant has not been under a "disability" as defined in the Social Security Act, from October 1, 2002 through the date of this decision (20 CFR 404.1520(f) and 416.920(f).

Tr. 15-19.

## STANDARD OF REVIEW

Under the Social Security Act, 42 U.S.C. § 405(g), the scope of review of the Commissioner's final decision is limited to: (1) whether the decision of the Commissioner is supported by substantial evidence and (2) whether the legal conclusions of the Commissioner are correct under controlling law.  Myers v. Califano, 611 F.2d 980, 982-83 (4th Cir. 1988); Richardson v. Califano, 574 F.2d 802 (4th Cir. 1978).  "Substantial evidence" is that evidence which a "reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 390 (1971).  Such evidence is generally equated with the amount of evidence necessary to avoid a directed verdict. Shivey v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984).  The

court's scope of review is specific and narrow.  It does not conduct a *de novo* review of the evidence, and the Commissioner's finding of non-disability is to be upheld, even if the court disagrees, so long as it is supported by substantial evidence. 42 U.S.C. § 405(g) (1982); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

The general procedure of a Social Security disability inquiry is well established.  Five questions are to be asked sequentially during the course of a disability determination.  20 C.F.R. §§ 404.1520, 1520a (1988).  An administrative law judge must consider (1) whether the claimant is engaged in substantial gainful activity, (2) whether the claimant has a severe impairment, (3) whether the claimant has an impairment which equals a condition contained within the Social Security Administration's official listing of impairments (at 20 C.F.R. Pt. 404, Subpart P, App. 1), (4) whether the claimant has an impairment which prevents past relevant work, and (5) whether the claimant's impairment prevents him from any substantial gainful employment.  If an individual is found not disabled at any step, further inquiry is unnecessary.  20 C.F.R. § 404.1503(a); Hall v. Harris, 658 F.2d 260 (4th Cir. 1981).  An administrative law judge's factual determinations must be upheld if supported by substantial evidence, and proper legal standards were applied. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

4

## DISCUSSION

### Plaintiff's Exceptions

By brief the plaintiff contended that the administrative law judge committed reversible error by (1) finding that the plaintiff did not meet Listing 12.05 for mental retardation, (2) by not including Plaintiff's low IQ in his hypothetical question to the vocational expert, (3) by improperly rejecting all examining physicians opinions (Drs. Long, Monda, and Hibbitts) in favor of nonexamining physicians' opinions, (4) by not explaining the inconsistency between the VE's testimony and the DOT, and (5) by not properly assessing the plaintiff's credibility.

### Listing 12.05

Plaintiff contends that she meets Listing 12.05, entitled "Mental Retardation and Autism." It appears that the plaintiff is correct and that this is dispositive of the case.

Listing 12.05 begins with the following definition of mental retardation: "Mental retardation refers to a significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period; i.e. the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05 (2007).

> SSA's interpretation of the Listing is that, if an individual has: (1) mental retardation, i.e., significantly subaverage general intellectual functioning with deficits in adaptive behavior

5

> initially manifested during the developmental
> period, or autism, i.e., a pervasive developmental
> disorder characterized by social and significant
> communication deficits originating in the
> developmental period; (2) a valid verbal,
> performance or full scale IQ in the range
> specified by Listing 12.05C; and (3) a physical or
> other mental impairment that is severe within the
> meaning of 20 C.F.R. § 404.1520(c) or §
> 416.920(c), the individual's impairments meet
> Listing 12.05C.

Social Security Acquiescence Ruling 98-2(8).

The valid verbal, performance or full scale IQ in the range
specified by Listing 12.05C is an IQ of 60 through 70.  20 C.F.R.
Pt. 404, Subpt. P, App. 1 § 12.05.

Plaintiff contends that she qualifies for benefits under
Paragraph C of Listing 12.05.  The record shows that Dr. James N.
Ruffing, Psy.D., evaluated the plaintiff on February 21, 2006, to
determine her intellectual functioning and reading ability.  (Tr.
167-171).  Testing revealed that Plaintiff had a verbal IQ of 68,
a performance IQ of 62, and a full scale IQ of 63.  Plaintiff
read at the 2nd grade level.  It was noted that her school
records showed generally poor academic performance and that she
failed her 2nd grade reading class, but had a C in the 6th grade.
She attended school for only three days in the 7th grade, but
reported having gone to the 8th or 9th grade and stopping due to
financial hardships.  She reported never having had a driver's
license, and she was unable to complete the intake questionnaire.
Dr. Ruffing said that Plaintiff's "[s]cores were consistent

6

between subtests and reflect consistent abilities across a wide range of cognitive abilities. Scores are not reflective of specific areas of strength or weakness. The Full Scale IQ of 63 is felt to accurately reflect her current level of intellectual functioning and places her in the Intellectually Deficient classification." Tr. 170. Dr. Ruffing's diagnostic impression was mild mental retardation[1] and functional illiteracy, and he said that this was consistent with Plaintiff's records. Tr. 170-171.

Therefore Plaintiff has three valid IQ score in the range called for in 12.05C, is functionally illiterate, and has a physical impairment that is severe within the meaning of 20 C.F.R. § 404.1520(c), that is, back and leg pain. In dispute is whether Plaintiff's low IQ manifested itself in deficits in her adaptive behavior before age 22.

The administrative law judge found that Plaintiff does not meet 12.05C despite valid IQ scores which satisfy the requirements because "the evidence, including the claimant's work history, her testimony, and her pattern of activities" do not

---

[1] A diagnosis of mental retardation requires a finding that the patient's intellectual limitations began in childhood. Diagnostic and Statistical Manual of Mental Disorders, American Psychiatric Association, 54 (4th Ed. Text Revision 2000) (DSM-IV). Further, The Fourth Circuit has recognized that the Commissioner's regulation "expressly define[s] mental retardation as denoting 'a lifelong condition.'" Branham v. Heckler, 775 F.2d 1271, 1274 (4th Cir. 1985).

show her impairment began before age 22.  Tr. 16.  The plaintiff
worked as a cleaning lady in a mill for over thirty (30) years.

A plaintiff does not have to present evidence of an IQ test
prior to his or her 22nd birthday.  Branham v. Heckler, 775 F.2d
1271, 1274 (4th Cir. 1985).  The Braham court noted that there
are many possible reasons why an adult would not have obtained an
IQ test early in life and the absence of an IQ test during the
developmental years does not preclude a finding of mental
retardation predating age 22.  Luckey v. U.S.Dept. of Health and
Human Services, 890 F.2d 666 (4th Cir. 1989).  The court held
that in the absence of any evidence of a change in a claimant's
intelligence functioning, it must be assumed that the claimant's
IQ had remained relatively constant.  Id. (citing Branham v.
Heckler, 775 F.2d 1271, 1274 (4th Cir. 1985)); see also, Sird v.
Chater, 105 F.3d 401, 403, n. 4 (8th Cir. 1997); Guzman v. Bowen,
801 F.2d 273, 275 (7th Cir. 1986); Hampton v. Apfel, 59 Soc. Sec.
Rep. Serv. 711, 1999 WL 46614 (E.D.Pa. Jan. 6, 1999); Durham v.
Apfel, 34 F.Supp.2d 1373, 1379-80 (N.D.Ga. 1998); McElroy v.
Apfel, 55 Soc. Sec. Rep. Serv. 751, 1998 WL 196457 (N.D.Ill. Apr.
17, 1998); Prentice v. Apfel, 55 Soc. Sec. Rep. Serv. 850, 1998
WL 166849 (N.D.N.Y. Apr. 8, 1998), Gant v. Sullivan, 773 F.Supp.
376, 381 (S.D.Fla. 1991).

Here, there is no evidence, much less substantial evidence,
that Plaintiff's IQ declined after childhood.  Indeed, all

evidence is to the contrary and Dr. Ruffing's diagnosis incorporates his opinion that Plaintiff's mental retardation is lifelong.  While Plaintiff had been able to function in a work setting, listing 12.05C anticipates that a plaintiff of limited intellectual ability will be more severely limited, and disabled when faced with other severe impairments.  The Commissioner recognizes that IQ tends to stabilize by the age of 16, that consistency among sub-test scores increases confidence in the test's accuracy, and approves the practice of inferring low IQ during the developmental period from testing done later in life. 65 Fed.Reg. 50746, 50772 (August 20, 2000).

Dr. Ruffing also found that Plaintiff was functionally illiterate, which is itself a deficit in adaptive functioning. DSM-IV-TR, 2000, p. 40.  The Fourth Circuit has found that evidence of illiteracy despite education further supports the finding that mental retardation occurred before age 22.  Turner v. Bowen, 856 F.2d 695, 698-699 (4th Cir. 1988).

While the administrative law judge contended that Plaintiff's low IQ was not manifested during her developmental years as evidenced by the fact that she worked for 33 years, her work is no bar to an award of benefits.  A plaintiff whose impairment meets a Listing is disabled without regard to the fact that he or she worked in the past or could return to his or her past work.  Ambers v. Heckler, 736 F.2d 1467, 1469-1470 (11th

9

Cir. 1984) (finding that a mentally retarded claimant who was gainfully employed in the past is disabled upon the cessation of employment).

Further, the quality and character of the plaintiff's work as a cleaning lady hardly overcomes the presumption that the plaintiff's IQ was constant over her life, and the evidence that she is functionally illiterate points to mental retardation occurring before age twenty-two. See, Turner v. Bowen, 856 F.2d 695, 699 (4th Cir. 1988). Again, the Commissioner may not rely upon previous work history to prove non-disability where the section 12.05C criteria are met. Benefits are due notwithstanding any prior efforts of the claimant to work despite the impairment. Murphy v. Bowen, 810 F.2d 433, 438 (4th Cir. 1987).

In sum, substantial evidence does not support the administrative law judge's finding that the plaintiff did not meet a Listing of Impairments at Step 3 of the sequential evaluation process and that decision should be reversed.

### REMAND OR AWARD BENEFITS

Whether or not to remand or reverse is generally approached on a practical level. Certainly an award of benefits is more appropriate when further proceedings would not serve any useful purpose, Kornock v. Harris, 648 F.2d 525, 527 (9th Cir. 1985). Likewise an award of benefits is appropriate when substantial

evidence on the record as a whole indicates that the claimant is disabled, and the weight of the evidence indicates that a remand would only delay the receipt of benefits while serving no useful purpose, or a substantial amount of time has already been consumed. Parsons v. Heckler, 739 F.2d 1334, 1341 (8th Cir. 1984); Tennant v. Schweiker, 682 F.2d 707, 710 (8th Cir. 1982). Also reversal is appropriate when the Commissioner has had an opportunity to develop the record on an outcome-determinative issue and has failed to produce substantial evidence, Broadbent v. Harris, 698 F.2d 407, 414 (10th Cir.1983), Tennant, 682 F.2d at 710-711; or where "there is not the slightest uncertainty as to the outcome" and the remand "would be an idle and useless formality." NLRB v. Wyman-Gordon Company, 394 U.S. 759, 766 n. 6 (1969). Barry v. Bowen, 862 F.2d 869, 1988 WL 124873(4th Cir. 1988). On the other hand, remand is appropriate "where additional administrative proceedings could remedy defects. . .". Rodriguez v. Bowen, 876 F.2d 759, 763 (9th Cir. 1989).

A review of the record and relevant case law reveals that this matter should be reversed and remanded for an award of benefits. Plaintiff applied for benefits in May 2004 alleging that she became unable to work since October 2003. Plaintiff has now waited for over three and one half years since she applied for benefits and is presently sixty three (63) years old. Further, Dr. Ruffing's report has not been contested in a legally

11

sufficient manner.  Therefore it appears that a remand for further proceedings would only delay the receipt of benefits.

**CONCLUSION**

Accordingly, for the aforementioned reasons, it is recommended that, pursuant to the power of this court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions under sentence four of §§ 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c)(3), the Commissioner's decision should be reversed under sentence four of 42 U.S.C. §§ 405(g) and 1383(c)(3), and the case be remanded to the Commissioner to take appropriate action regarding an award of benefits to the plaintiff based on a disability commencing October 29, 2003. See, Melkonyan v. Sullivan, 111 S.Ct. 2157 (1991).

Respectfully Submitted,

Robert S. Carr
United States Magistrate Judge

Charleston, South Carolina

March 31, 2008

12